IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

JEREMY JAY WOODY, :
:
    Plaintiff, :
:
v. :
: CASE NO.: 5:16-CV-00467-LJA
HOMER BRYSON, et al, :
:
    Defendants. :
:

## ORDER

This case is currently before the Court for preliminary screening as required by the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A. Plaintiff Jeremy Jay Woody, an inmate confined at Central State Prison in Macon Georgia, filed this action pursuant to 42 U.S.C. § 1983, alleging that prison officials failed to provide necessary accommodations for his hearing disability, in violation of Plaintiff's constitutional rights. (Doc. 1). Before the Court is also Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. 2) and Plaintiff's request for appointment of counsel (Doc. 1, p. 17).

### I. Motion to Proceed *In Forma Pauperis*

Pursuant to 28 U.S.C. § 1915, the district courts may authorize the commencement a civil action *in forma pauperis* ("IFP") if the plaintiff shows that he is indigent and currently unable to pay the court's filing fee. A prisoner seeking to proceed under § 1915 must provide the district court with both (1) an affidavit in support of his claim of indigence and (2) a certified copy of his prison "trust fund account statement (or institutional equivalent) for the 6-month period immediately preceding the filing of the complaint." § 1915(b).

Plaintiff moved for leave to proceed *in forma pauperis* in this case, and his motion was granted with the requirement that he pay an initial partial filing fee of $15.80. That payment has been received by the Clerk of Court; thus Plaintiff's complaint is now ripe for preliminary

screening. Plaintiff is, however, also required to pay the remainder of the filing fee, in installments, under the payment plan as set forth in § 1915(b). For this reason, it is requested that the CLERK forward a copy of this ORDER to the business manager of the facility in which Plaintiff is incarcerated so that withdrawals from his account may commence as payment towards the filing fee.

### A. Directions to Plaintiff's Custodian

Because Plaintiff has now been granted leave to proceed *in forma paupers* in the above-captioned case, it is hereby ORDERED that the warden of the institution wherein Plaintiff is incarcerated, or the Sheriff of any county wherein he is held in custody, and any successor custodians, each month cause to be remitted to the CLERK of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's trust account at said institution until the $350.00 filing fee has been paid in full. It is further ORDERED that these funds be collected and withheld by the prison account custodian who shall, on a monthly basis, forward the amount collected to the CLERK of this Court as payment towards the filing fee, provided the amount in the prisoner's account exceeds $10.00. The custodian is DIRECTED to continue these collections from Plaintiff's trust account until the entire $350.00 filing fee has been paid, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

### B. Plaintiff's Obligations Upon Release

In the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to continue making monthly payments to the CLERK toward the balance due until said amount has been paid in full. Collection from Plaintiff of any balance due on the filing fee by any means permitted by law is hereby authorized in the event Plaintiff is released from custody and fails to remit payments. Plaintiff's complaint may be dismissed if he is able to make payments but fails to do so.

## II. Motion for Appointment of Counsel

Before addressing the Complaint, the Court must also consider Plaintiff's request for counsel. Though not raised in a separate motion, Plaintiff's Complaint, when liberally

construed, alleges that his physical impairment may render him unable to adequately prosecute his case without the assistance of counsel. (Doc. 1, p. 17).

The district court is vested with the discretion, by 28 U.S.C. § 1915(e), to appoint counsel in a civil case for a plaintiff unable to afford an attorney. Civil litigants (including indigent prisoners pursuing a § 1983 action), however, do not have an absolute right to the appointment of counsel. *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987). The appointment of counsel in a civil case is "a privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." *Id.* "The key is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help." *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993).

In this case, Plaintiff has filed a § 1983 complaint on the standard complaint form designed for *pro se* litigants. The PLRA requires that the undersigned now review Plaintiff's complaint to determine whether he can possibly state a viable claim against the named defendants. This process is routine in *pro se* prisoner actions and not an "exceptional circumstance" justifying the appointment of counsel. The facts and legal issues involved in this case are fairly straightforward; and the court has not imposed any procedural requirements which could limit Plaintiff's ability to present his case. *See Kilgo*, 983 F.2d 193-94. Further, through his pleadings, Plaintiff has already shown that he is able to clearly and logically communicate his factual and legal claims to the Court in writing without the need of counsel. Accordingly, Plaintiff's request for counsel is **DENIED**.

### III.    Authority & Standard for Preliminary Review

The Court will now turn to Plaintiff's Complaint. Under the PLRA, the district courts are obligated to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). Frivolity screening is also required, under 28 U.S.C. § 1915(e), when the plaintiff is proceeding IFP. Both statutes apply in this case, and the standard of review under either statute is the

same. When conducting a preliminary review, the court must accept all factual allegations in the complaint as true and make all inferences in the light most favorable to the plaintiff. *See Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). *Pro se* pleadings are also "held to a less stringent standard than pleadings drafted by attorneys," and thus *pro se* complaints are "liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

The district court, however, cannot allow a plaintiff to litigate frivolous, conclusory, or speculative claims. As part of the preliminary screening, the court is obligated to dismiss a complaint, or any part thereof, prior to service, if it is apparent that the plaintiff's allegations, when taken as true, fail to state a claim upon which relief may be granted – i.e., that the plaintiff is not entitled to relief based on the facts alleged. To state a viable claim, the complaint must include "enough factual matter" to – not only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" – but to also create "a reasonable expectation" that discovery will reveal evidence to prove the claim(s). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The claims cannot be speculative or based solely on the plaintiff's beliefs or suspicions; each must be supported by allegations of relevant and discoverable fact. *Id.* Thus, neither legal conclusions nor a recitation of legally relevant terms, standing alone is sufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (holding that "labels and conclusions" or "a formulaic recitation of the elements" of a cause of action is insufficient to state a claim). Claims without any "arguable basis in law or fact" are considered frivolous. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

**IV.  Plaintiff's Complaint**

In this case, Plaintiff's claims arise out of the conditions of his confinement at Central State Prison. Doc. 1 at 6. Plaintiff, a hearing-impaired inmate, complains that prison officials have refused (and continue to refuse) to adequately accommodate his need for alternative forms of communication with prison staff and the persons outside of the prison. *Id.* at 6-16. Prison officials require Plaintiff to communicate by writing or reading lips. *Id.* at 6. No sign language interpreters are provided for conversations with counselors, prison officials, or even during disciplinary hearings, which have always, according to Plaintiff, resulted in his

4

conviction of some offense. *Id.* at 7, 9, 15-16. Plaintiff contends that his limited ability to communicate with others causes him to be: "continually discriminated and alienated by the staff and counselors"; unable to participate in programs available to other inmates; denied access training programs and educational classes; unable to effectively communicate with corrections officers; and hindered when seeking medical and mental health assistance. *Id.* at 15-16.

Plaintiff is unable to use a voice-only telephone. *Id.* at 15. Thus, on March 9, 2016, Plaintiff asked officers if he could use the prison's "TTY machine" to make a phone call. *Id.* at 6. The officers responded that their TTY machine was "inaccessible and outdated" and that, if Plaintiff could not use the telephone, that was "[his] problem." *Id.* Plaintiff then filed a grievance with the warden complaining that he did not have a means of communicating with his family and friends and requested that the prison provide a "videophone relay service (VRS) interpreter for deaf inmates," which is a video interpreting service that allows a hearing-impaired person to use sign language to communicate over the telephone. *Id.* at 7. Plaintiff's grievance also included the name, address, and phone number of a federally funded company that provides interpreting services for deaf prisoners, such as a VRS, free of charge. *Id.*

Shortly thereafter, Plaintiff was called to meet with the senior counselor, Pashion Chambers. *Id.* At that time, Plaintiff asked if he could have either an interpreter or a device that provides sign language interpreting services (video remote interpreting or "VRI") for their conversation, and she said "no." *Id.* She then informed him that the warden denied his grievance. *Id.* The denial stated that the matter was "out of the control of the Department of Corrections" and that "JPay" (an inmate communications service) was "working on a solution to that problem." *Id.* JPay, however, did not have VRS capability, and its solution would still require the prison to provide interpreters. *Id.* at 8. Plaintiff refused to sign the grievance during that meeting. *Id.* at 7-8. Later, when attempting to obtain a copy of the denial, Plaintiff approached Deputy Warden Thomas with a note asking if could speak to him with video interpreting. *Id.* at 9. Thomas refused, demanding that Plaintiff write down what he wanted. *Id.* Due to the distraction of other inmates, however, Plaintiff could not keep Thomas' attention

5

and could not accurately lip read his responses because of Thomas' use of "care and treatment terminology" that Plaintiff could not decipher. *Id.* at 11.

Plaintiff appealed the denial of his grievance to the "central office" and again explained both the need for VRS and how the prison could to get the service free of charge. *Id.* at 12. His appeal, however, was denied because (1) the mental health unit at the prison already had a device that would allow Plaintiff view his family members and speak to them in sign language, and (2) Plaintiff also had the ability to "to communicate with individuals outside the institution [by] using the US Postal Service." *Id.* at 13.

When unsuccessful in the grievance process, Plaintiff filed the present action against Counselor Chambers, Deputy Warden Thomas, and many other prison officials (not specifically mentioned in his statement of claims). In light of Plaintiff's many allegations, the Court liberally construes his complaint as bringing claims under the First, Eighth, and Fourteenth Amendments of the United States Constitution, the Title II of Americans with Disability Act ("ADA"), and § 504 of the Rehabilitation Act ("RA"). Plaintiff prays for $15,000,000 in damages and an injunction requiring updated technology for hearing impaired inmates, certified American Sign Language interpreters, and deaf advocates and services within in the prison. *Id.* at 17.

### A. First Amendment Claims

Despite their incarceration, prisoners retain "the First Amendment right to communicate with family and friends." *Pope v. Hightower*, 101 F.3d 1382, 1385 (11th Cir. 1996); *see also Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 213 (4th Cir. 2017) ("Courts have generally concluded that the First Amendment rights retained by convicted prisoners include the right to communicate with others beyond the prison walls."). While it is not required that deaf or hearing impaired prisoners have the same access to TTY machines or VRI/VRS services that non-impaired prisoners have to telephones, unreasonable restrictions on access to TTY machines or VRI/VRS services impinge on prisoners' First Amendment rights. *See Heyer*, 849 F.3d at 218; *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1042 (E.D. Mich. 2005). While a hearing-impaired prisoner's right to communicate has not been addressed in this Circuit, in

*Heyer*, the Fourth Circuit concluded that the Bureau of Prisons interfered with the plaintiff's First Amendment rights by regularly restricting or denying use to the TTY machine, keeping the TTY machine in a location where it was never usable on the weekends or at night, and by training so few staff members on its operation that the plaintiff could not use the machine when those staff members were unavailable. 849 F.3d at 218. Similarly, in *Tanney*, the District Court for the Eastern District of Michigan concluded that the plaintiff's First Amendment rights were implicated when there was only one TTY machine, which was kept locked in an office with no policy on availability and with requests for use often being denied. 400 F. Supp. 2d at 1042.

Plaintiff alleges that there is no TTY available for his use and that the only VRI/VRS service available is housed in the mental health unit. He also alleges that each request for assistance in the mental health unit "leads to abusive reactions retaliations and threats [sic]." (Doc. 1, at 14). Because of the lack of technology available to Plaintiff, he has not been able to communicate with his family in almost three years. *Id.* at 15. In light of Plaintiff's allegations that he is regularly restricted from using the VRI/VRS service and that there is no TTY service available, the Court finds that Plaintiff's First Amendment claim is not frivolous.

### B. Eighth Amendment Claims

Plaintiff's Complaint may also be liberally construed as attempting claims under the Eighth Amendment. The Complaint asserts that the lack of sign-language interpreters and/or another assistive device has hindered Plaintiff's access to medical and mental health care as well as his ability to understand (and communicate with) prison guards. "The Supreme Court has interpreted the Eighth Amendment to include 'deliberate indifference to serious medical needs of prisoners.'" *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and subjective inquiry." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). "First, a plaintiff must set forth evidence of an objectively serious medical need." *Id.* "Second, a plaintiff must prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need."

7

*Id.*

"A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognized the necessity for a doctor's attention.'" *Id.* (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994). In either case, the medical need must pose a "substantial risk of serious harm" if left untreated. *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). Plaintiff alleges that he suffers from "a bad hernia problem" and "melaomnia [sic] cancer." (Doc. 1 at 15). Cancer is a serious medical need under the Eleventh Circuit's test. *See D'Amico v. Montoya*, No. 4:15cv127-MW/CAS, 2016 WL 4708950 at * 4 (N.D. Fla. July 28, 2015).

To demonstrate that a prison official acted with "deliberate indifference," the prisoner must prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown*, 387 F.3d at 1351. Deliberate indifference may include "a complete denial of readily available treatment," "a defendant who delays necessary treatment for non-medical reasons," or state officials who "knowingly interfere with a physician's prescribed course of treatment." *Bingham*, 654 F.3d at 1176. Here, Plaintiff has not alleged that the prison officials who denied him access to a TTY machine or VRI/VRS services knew of or disregarded his medical conditions, or even that Plaintiff sought treatment for such conditions. Accordingly, nothing in the Complaint suggests that the prison officials acted with deliberate indifference to Plaintiff's serious medical needs, and Plaintiff has failed to state a claim for an Eighth Amendment violation.

### C. Fourteenth Amendment Equal Protection Claim

Plaintiff also asserts that he is being denied "equal access" to telephone communication. The Court liberally construes this as an attempted equal protection claim under the Fourteenth Amendment. "[T]he disabled are not a suspect class, and thus a government's differential treatment of them is only entitled to rational basis review." *Rylee v. Chapman*, 316 F. App'x 901, 907 (11th Cir. 2009); *see also Lussier v. Dugger*, 904 F.2d 661, 671 (11th Cir. 1990); *Bonner v. Lewis*, 857 F.2d 559, 565 (9th Cir. 1988). Accordingly, in order to state a Fourteenth Amendment Claim, Plaintiff must demonstrate that he has been

"intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To be "similarly situated," "the comparators must be prima facie identical in all relevant respects." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1264 (11th Cir. 2010). While the Eleventh Circuit has not directly addressed the issue of unequal access to telephone communication, the Eighth Circuit and other district courts have held that non-hearing impaired prisoners are not similarly situated to hearing-impaired or deaf prisoners. *See Hansen v. Rimel*, 104 F.3d 189, 190 (8th Cir. 1997); *Douglas v. Gusman*, 567 F. Supp. 2d 877, 887 (E.D. La. 2008); *Spurlock v. Simmons*, 88 F. Supp. 2d 1189, 1194 (D. Kan. 2000). For example, in *Spurlock*, the United States District Court for Kansas explained that it was "uncontroverted" that the plaintiff was unable to use the "regular inmate telephone system," and had to use a facility telephone outfitted with the appropriate equipment. The Court held that the plaintiff was not similarly situated to non-hearing impaired inmates because such inmates "do not have unlimited access to facility telephones;" they only have "unlimited access to the inmate telephone system." Likewise, Plaintiff has failed to show that he was treated differently than similarly situated inmates that require the same technology to use telephones or other communication devices. Accordingly, he has failed to state an equal protection claim.

### D. **Fourteenth Amendment Due Process Claim**

Plaintiff also alleges a violation of his due process rights. The Complaint alleges that Plaintiff was denied access to an interpreter during disciplinary hearings which resulted in multiple convictions. Evidence suggesting that Plaintiff was denied a fair disciplinary hearing is sufficient to state a due process claim. A prisoner seeking to state a claim for violation of due process must first allege facts to show that the denial of a fair hearing caused him to suffer an "atypical and significant hardship … in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). For example, loss of privileges is not deemed to be an atypical hardship. *See Overton v. Bazzetta*, 539 U.S. 136-37 (2003); *Moulds v. Bullard*, 345 F. App'x 387, 396 (11th Cir. 2009). In this case, Plaintiff fails to allege any facts to show that the absence of an interpreter at his disciplinary hearing caused him to suffer an "atypical and

9

significant" hardship. Accordingly, Plaintiff failed to state a claim for denial of due process.

### E. <u>ADA & RA Claims</u>

Finally, though not explicitly cited in the Complaint, Plaintiff's claims are also liberally construed as including possible claims for violation of his rights under the ADA and RA. Title II of the ADA prohibits exclusion from services, programs, or activities of a "public entity" as well as "discrimination by any such entity." *See* 42 U.S.C. § 12132; *Edison v. Douberly*, 604 F.3d 1307, 1308 (11th Cir. 2010). The RA similarly provides that, "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). State agencies and prisons are considered to be "public entities" which may be sued under the ADA and RA, *United States v. Georgia*, 546 U.S. 151, 154, (2006), and the claims under these statutes are governed by the same standard. *Cash v. Smith*, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000).

> To state a claim under the ADA or RA, a plaintiff generally must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Hatcher v. Thomas*, No. 2:14-CV-67-WHA, 2017 WL 712634, at *4–5 (M.D. Ala. Feb. 1, 2017), recommendation adopted, No. 2:14-CV-67, 2017 WL 710056 (Feb. 22, 2017).

In this case, Plaintiff has named Homer Byson, Clinton Perry, Dexter Spikes, Michael Thomas, Tijuana Hall, Sheneca King, David Ethridge, Tommy Coffee, Syphronia, Eugenia Smith, Sidonie Hall, Racheal Moncrief, Pashion Chamblers, Junaita Thrope, Walter Berry, John Fagan, Williams Cznareski, Komola Edwards, Mizell Davis, Ms. Jones, and Julie Martin as defendants. Neither the Georgia Department of Corrections nor the prison is named party. Individuals employed by a correctional facility cannot be sued under either the ADA or RA. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1172 (11th Cir. 2003). Thus, the undersigned

will, for the purpose of this review, liberally construe the complaint as bringing claims against the defendants in both in their individual and official capacities. Claims against employees in their "official capacities" are, in essence, against a "public entity," the Georgia Department of Corrections. *See e.g., Edison v. Douberly*, 604 F.3d 1307, 1308 (11th Cir. 2010).

Even when Plaintiff's complaint is read in the most generous light possible, however, Plaintiff's vague factual allegations cannot support a claim against the Department of Corrections under either statute. In his complaint, Plaintiff alleges only that he has been unable to participate in programs available to other inmates because there are no training programs or educational classes with certified American Sign Language interpreters. He does not identify any specific programs or classes for which he was both eligible and denied access; nor does he specify who was responsible for denying him such access, when, or why. Without more factual support, Plaintiff's conclusory allegations fail to state a claim upon which relief can be granted.

## V.    Conclusion

Plaintiff's First Amendment claim is not frivolous, and is therefore not dismissed. Plaintiff's other claims fail to state a claim for relief, and are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e).

**SO ORDERED**, this   16th   day of   May  , 2017.

     /s/ Leslie J. Abrams     
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**